```
              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF MISSISSIPPI
                    NORTHERN DIVISION
```

JERRY BROWN                                                            PLAINTIFF

V.                                            CIVIL ACTION NO. 3:20-CV-63-DPJ-FKB

UNITED STATES OF AMERICA,                                             DEFENDANTS
DEPARTMENT OF VETERANS AFFAIRS
AND UNITED STATES OF AMERICA,
VETERANS' ADMINISTRATION
MEDICAL CENTER

## ORDER

Plaintiff Jerry Brown, a former United States Marine, filed this Federal Tort Claims Act (FTCA) suit alleging negligence and medical malpractice relating to his lung cancer. Defendant the United States filed an answer, and Brown moved to strike all but one of its affirmative defenses. Not long after filing his motion to strike, Brown filed a motion for a temporary restraining order (TRO) and a motion for a hearing. Additionally, Defendant moved to dismiss. For the following reasons, Brown's motion to strike [17] is denied, his motion for a TRO [19] is denied, his motion for a hearing [26] is denied, and Defendant's motion to dismiss [32] is granted as to any claims based on the VA's benefits decision but otherwise denied.[1]

I.    Background

As early as 2010, Brown was diagnosed with kidney cancer. Records [32-4] at 15. In December 2015, while receiving treatment at the Veterans' Administration Medical Center (VAMC) facility in Jackson, Mississippi, Brown's doctors discovered that his kidney cancer had

---

[1] Brown named "United States of America, Department of Veterans Affairs" and "United States of America, Veterans' Administration Medical Center" as Defendants. Am. Compl. [5] ¶¶ 2–3. "It is well established that FTCA claims may be brought against only the 'United States,' and not the agencies or employees of the United States." *Walters v. Smith*, 409 F. App'x 782, 783–84 (5th Cir. 2011). Accordingly, "Defendant," as used in this Order, refers to the United States.

metastasized into his lungs. *Id.* at 16–17; *accord* Am. Compl. [5] ¶¶ 12, 14. Brown was receiving veteran's benefits from the United States Department of Veterans' Affairs (VA) at the time, and due to his lung-cancer diagnosis, he requested a change in those benefits on January 6, 2016. Records [32-4] at 11.

On January 27, 2019, after reviewing Brown's medical records, the VA concluded that Brown's records "d[id] not show a primary diagnosis of Lung cancer." *Id.* at 9. Instead, "[t]he examiner stated that the evidence of record and available medical and scientific research d[id] not demonstrate a link between [Brown's] claimed Lung cancer and" his military service. *Id.*

After filing two administrative tort claims with the VA, both of which were denied, Brown filed this suit alleging negligence and medical malpractice. In its Answer, Defendant asserts twenty-one affirmative defenses. *See* Answer [14] at 1–5. Brown, who is proceeding pro se, has moved to strike the first twenty of those defenses. *See* Pl.'s Mem. [18] at 2–9.

Brown also filed a motion for a TRO, saying that on December 18, 2018, he received a letter from the VA "stating he owe[d] $15,699.60." TRO [19] at 1. But he later challenged this debt before the agency and won. *Id.* at 2 ("On Sept[ember] 16, 2019, Defendant Veteran Affair[s] ruled the plaintiff did not owe $15,699.60 like they first allege."). Despite that result, on June 25, 2020, Brown received a letter claiming that he "[s]till[] owes the $15,699.60." *Id.* Therefore, he requests an order "stopping the Defendant[] from taking any money [p]ending the resolution of this matter on the merits and order[ing] the Defendant[] to [r]efrain from further harassing the plaintiff[.]" *Id.* at 2–3. Brown also requests a hearing, claiming he "can show [through] his evidence that the Defendant[] and Defendant['s] Attorneys[] have committed fraud on the Court." Pl.'s Mot. [26] at 1.

After briefing concluded on Plaintiff's motions, Defendant filed a motion to dismiss for lack of subject-matter jurisdiction. Because that motion potentially impacted the others, the Court elected to hold the ruling on Brown's motions and decide everything at once. Briefing on all pending motions is now closed, and the Court is prepared to rule.

II.   Defendant's Motion to Dismiss

   A.   Standard

A motion to dismiss for want of subject-matter jurisdiction falls under Federal Rule of Civil Procedure 12(b)(1). "The party which asserts jurisdiction bears the burden of proof for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "A Rule 12(b)(1) motion should be granted only 'if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.'" *Id.* (quoting *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009)). When evaluating such a motion, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2011).

   B.   Lack of Judicial Review

Brown brings his claims under the FTCA. Am. Compl. [5] ¶¶ 5, 9, 24. That statute waives the United States' immunity for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1). Defendant says the Court lacks jurisdiction because Brown's claim is not actually one for negligence; rather, it says "he is

challenging the decision-making process related to his veteran's benefits," something he may not do in this Court.  Def.'s Mem. [33] at 4.

"In 1988, Congress passed the Veterans' Judicial Review Act ('VJRA'), which clearly announced the intent of Congress to preclude review of benefits determinations in federal district courts."  *Zuspann v. Brown*, 60 F.3d 1156, 1158 (5th Cir. 1995) (footnote omitted).  Specifically, the VJRA provides the following:

> (a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans.  Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a).  The VJRA "made changes to the existing structure for the administrative review of such decisions, and created a new Article I Court, the Court of Veterans Appeals."  *King v. United States*, 901 F. Supp. 2d 781, 784–85 (S.D. Miss. 2012).  Under this system, veterans may "appeal benefits determinations to the Board of Veterans' Appeals," and "[j]urisdiction to review the Board's decisions is conferred exclusively on the Court of Veterans Appeals."  *Zuspann*, 60 F.3d at 1159.  From there, "[t]he United States Court of Appeals for the Federal Circuit has exclusive jurisdiction to review the decisions of the Court of Veterans Appeals."  *Id.*  So, to the extent Brown's Complaint can be construed as challenging benefits decisions, the Government's motion is granted.

Section 511(a) does not, however, bar all tort claims; it precludes judicial review when the plaintiff's claim would require the Court to "determine whether the VA acted properly in handling his request for benefits."  *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 415 (5th Cir. 2013).  Put simply, "section 511(a) is not a jurisdictional bar to a claim that does not entail the review of a benefits decision."  *Watson v. Veterans Hosp. Med. Staff*, No. 20-510 (UNA),

4

2020 WL 1695087, at *2 (D.D.C. Apr. 7, 2020) (citing *Blue Water Navy Vietnam Veterans Ass'n, Inc. v. McDonald*, 830 F.3d 570, 576 (D.C. Cir. 2016)).

Notably, it is not always clear "whether a claim permissibly alleges a tort or impermissibly challenges a benefits decision." *Rebich v. Dep't of Veterans Affs.*, No. CV 19-26-M-DWM, 2020 WL 264324, at *1 (D. Mont. Jan. 17, 2020). And at this point, the Court cannot say with certainty that it entirely lacks subject-matter jurisdiction.

Starting with the negligence claim, Brown alleges that "[o]n January 27, 2019," Defendant "breached the applicable standard of medical care owed to the Plaintiff." Am. Compl. [5] ¶ 22. This happens to be the same day the VA released its decision denying Brown benefits for lung cancer—something Brown may not challenge in this Court. *Id.* ¶ 19; *see also* Records [32-4] at 9. But Brown also seems to challenge the VAMC's record keeping and diagnosis. For example, he says January 27, 2019, is also when he "discover[ed] the clubbing of his fingers had been reported incorrectly." Pl.'s Resp. [35] at 2. The VAMC first reported "clubbing" in Brown's extremities on December 8, 2015, Records [32-4] at 20, but then on May 27, 2018, found no clubbing, *id.* at 13. Similarly, Brown alleges in his Amended Complaint that the VAMC first reported lung cancer in April 2012, then reported no lung cancer in April 2015. Am. Compl. [5] at ¶¶ 13–17.

In sum, while the VA's benefits decision occurred the same day as the negligence Brown alleges, it is unclear whether Brown takes issue with that decision, the physicians' underlying care and reporting, or both. If he challenges the care and reporting, then the Court would not need to "determine whether the VA acted properly in handling his request for benefits." *King*, 728 F.3d at 415. And as such, it would not be "certain that the plaintiff cannot prove a plausible

5

set of facts that establish subject-matter jurisdiction." *Davis*, 597 F.3d at 649. But as noted, the Court lacks jurisdiction to hear any challenges to the benefits decision.

The same is true for Brown's medical-malpractice claim—which may overlap the negligence claim in this pro se pleading. Brown's malpractice count incorporates his previous averments, including those suggesting his lung cancer may have been misreported. Am. Compl. [5] ¶ 25. He then avers that "[a]t all times, the . . . VAMC was working under the directions of [the] VA," *id.* [5] ¶ 18, and that the VA "fail[ed] to properly supervise the medical care and treatment that was being provided by [the] VAMC," *id.* ¶ 26. This presupposes sub-standard treatment; indeed, Brown complains of "mistakes in classification of lung cancer as either small cell or non-small cell lung cancer, mistakes in staging, and [a] mistaken diagnosis of lung cancer." *Id.* ¶ 27.[2]

So, as with the negligence claim, it does not appear *certain* that Brown "cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Davis*, 597 F.3d at 649. Whether Brown's doctors satisfied the applicable standard of care is distinct from whether the VA properly denied benefits. The former may proceed, the latter must be dismissed for lack of jurisdiction.[3]

---

[2] The Amended Complaint includes other alleged acts that are more ambiguous. For example, the asserted "failure to carry out adequate examination or take an accurate history" seemingly relates to the healthcare providers, but in laymen's terms could address the VA's benefit-related investigation. Am. Compl. [5] ¶ 27. So too could the alleged "failure to refer . . . [Brown] to a chest physician for further investigations," and "mistakes in interpreting investigations." *Id.* Again, to the extent these challenge the benefits decision, this Court is without jurisdiction to hear the complaint.

[3] Defendant did not argue that the Court lacks jurisdiction to consider allegedly negligent reporting by the treating healthcare providers that leads to a challenged benefits decision. Accordingly, the Court has not considered that legal issue.

C.     Exhaustion

Defendant apparently anticipated the Court's potential holding on the jurisdictional issues and on whether Brown is asserting claims apart from challenges to the benefits decisions. It therefore says any claims unrelated to the benefits decision have not been exhausted. Def.'s Mem. [33] at 6. Specifically, Defendant argues that Brown's administrative complaint "strictly pertained to the denial of service connection benefits" and "did not exhaust any claims of medical malpractice." *Id.*

"A plaintiff must exhaust administrative remedies before pursuing relief under the FTCA." *Lopez-Heredia v. Univ. of Tex. Med. Branch Hosp.*, 240 F. App'x 646, 647 (5th Cir. 2007) (citing 28 U.S.C. § 2675(a); *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994)). "To fulfill th[e exhaustion] requirement, an FTCA claimant must provide the agency with 'facts sufficient to allow his claim to be investigated.'" *Life Partners, Inc. v. United States*, 650 F.3d 1026, 1030 (5th Cir. 2011) (quoting *Cook v. United States*, 978 F.2d 164, 166 (5th Cir. 1992)). This does not require "plaintiffs to specifically enumerate legal theories of recovery in their administrative claims." *Id.* (quoting Frantz, 29 F.3d at 224). And "[a]s long as 'the Government's investigation of [the] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim.'" *Id.* (quoting *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir. 1980)).

Brown provided the VA enough to exhaust the non-benefits related claim, at least in the amended administrative tort claim filed May 23, 2019. Records [32-4] at 1. In that document, Brown asserted negligence and malpractice, among other things. *Id.* And contrary to Defendant's argument, his amended claim challenged more than just the denial of benefits for lung cancer. Brown asserted in his Statement in Support of Claim that "[o]n or about 1-27-19

[he] became aware that there was no diagnosis for [his] medical condition lung cancer." *Id.* at 7. Yet he was "receiving chemo medicine for kidney and lung cancer" and continued treatment for lung cancer through 2017. *Id.* According to him, "[t]he finding on 1-27-19 show[ed] and establish[ed] on the part of the VA medical center and the VA administration the failure to diagnose or [a] misdiagnosis, ignoring laboratory results, failure to order proper testing and failure to recognize symptoms of lung cancer." *Id.* Finally, he states that his oncologist reported "no clubbing [and] that finding is not true or omission of the symptoms of my lung cancer." *Id.*

These facts are enough to "allow his claim to be investigated." *Life Partners, Inc.*, 650 F. App'x at 1030. Brown specifically alleged negligence and medical practice in his amended administrative tort claim *and* provided a factual basis for the claims. As in his Amended Complaint, his amended tort claim may well have been challenging the benefits decision, but he also alleged negligent record keeping and/or medical malpractice separate from that decision. The VA had enough information to investigate a potential medical-malpractice claim. Defendant's motion to dismiss based on failure to exhaust is denied.

III.     Brown's Motion to Strike

Defendant's Answer lists twenty-one "affirmative defenses." Answer [14] at 1–5. Brown primarily offers two general rejoinders: (1) some affirmative defenses "simply den[y] plaintiff's allegations and [are] therefore not [] proper affirmative defense[s]," Pl.'s Mem. [18] at 3, 5, 6, 7; and (2) some are "conclusion[s] of law and lack[] any factual detail and should be stricken,"[4] *id.* at 4, 5, 6, 7, 8, 9. He also provides somewhat substantive arguments to Defendant's first two affirmative defenses. *See id.* at 2.

---

[4] One response simply states, "This is not a proper affirmative defense. Therefore [it] should be stricken." Pl.'s Mem. [18] at 8.

Federal Rule of Civil Procedure Rule 8(b)(1) provides that "a party must . . . state in short and plain terms its defenses to each claim asserted against it," and Rule 8(c)(1) says "a party must affirmatively state any avoidance or affirmative defense." A party may, under Rule 12(f), move to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

In his Reply, Brown says Rule 12(f) employs a three-part test for evaluating an affirmative defense, which includes a Rule 12(b)(6) analysis of the pleaded defense. Pl.'s Reply [22] at 2 (quoting *Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 906 (N.D. Ohio 2003)). There is no such test in the Fifth Circuit. Instead, Defendant is required to "plead an affirmative defense with enough specificity *or* factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (emphasis added). Thus, "an affirmative defense's sufficiency under Rule 12(f) generally relates to *legal* sufficiency and not whether the defense was pleaded with sufficient factual detail." *Blount v. Johnson Controls, Inc.*, 328 F.R.D. 146, 150 (S.D. Miss. 2018) (citing *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 302 F.R.D. 416, 419 (S.D. Tex. 2014) (Costa, J.)).

This presents a tall task for parties moving to strike defenses under Rule 12(f). Such relief is warranted only when the defense "cannot, as a matter of law, succeed under any circumstance." *Id.* at 152 (citing *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013)). Thus, "if there is a question of law or fact regarding a particular defense, a court must deny a motion to strike." *Id.* at 148 (quoting *Bertoniere v. First Mark Homes, Inc.*, No. 2:09-CV-156-DCB-MTP, 2010 WL 729931, at *1 (S.D. Miss. Feb. 25, 2010) (citations omitted)). And "in some cases, merely pleading the name of the affirmative defense . . . may be sufficient . . . ." *Id.* at 150 (quoting *Woodfield*, 193 F.3d at 362).

9

Finally, a motion to strike "generally should not be granted absent a showing of prejudice to the moving party." *Conn v. United States*, 823 F. Supp. 2d 441, 446 (S.D. Miss. 2011); *accord Davis v. Hinds Cnty.*, No. 3:16-CV-674-DPJ-FKB, 2017 WL 2269010, at *2 (S.D. Miss. May 23, 2017); *see also* 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.) (noting general agreement that Rule 12(f) motions should be denied absent showing that defense "may cause some form of significant prejudice").

Given these restrictions, it is not surprising that "[m]otions to strike defenses are generally disfavored and rarely granted." *Id.* at 148. Brown's motion is no different. He makes substantive arguments as to only the first two of those defenses—failure to state a claim and lack of jurisdiction. But reading the Answer as a whole, both defenses provide fair notice. In fact, Defendant has already moved under the second defense. And even if Defendant could have said more, Brown has not shown prejudice as to these or any other defenses. *See Conn*, 823 F. Supp. 2d at 446.

Brown's other objections fare no better. Defendant does not need to provide detailed factual descriptions of its affirmative defenses. *See Blount*, 328 F.R.D. at 150. And although many of Defendant's affirmative defenses deny the essential elements of Brown's claims,

> the fact that Defendant[] pleaded more than was required merely gives [Brown] a roadmap for the issues he may face during discovery. There is no prejudice. And to the extent some defenses . . . may have been mislabeled as "affirmative defenses," "Rule 12(f) is not to be used to police the form of a pleading or to correct any misdesignations it might contain." 5C Fed. Prac. & Proc. Civ. § 1381 (3d ed.).

*Id.* at 151. In short, the Court will not strike any of Defendant's affirmative defenses on the ground that they "simply den[y] plaintiff's allegations." Pl.'s Mem. [18] at 3, 5, 6, 7. Nor does Brown present any other ground that justifies striking Defendant's affirmative defenses. His motion to strike is denied.

IV.  TRO Motion

Brown seeks an order "stopping the Defendant[] from taking any money [p]ending the resolution of this matter on the merits and order[ing] the Defendant[] to [r]efrain from further harassing the plaintiff[.]"  TRO [19] at 2–3.  Defendant acknowledges that Brown received a June 25 letter mistakenly saying he owed money but claims it corrected that mistake in a letter dated July 16, 2020.  Def.'s Resp. [24] at 2; *see also* Letter [26-1].  In what might be an example of not taking "yes" for an answer, Brown says a controversy remains and the letter relieving him of the mistaken debt is inadmissible.  Pl.'s Reply [25] at 1–2.

A TRO is an "extraordinary remedy."  *Lakedreams v Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991).  To obtain one, the movant must show (1) "a substantial likelihood that the movant will prevail on the merits"; (2) "a substantial threat that irreparable harm will result if the injunction is not granted"; (3) the movant's "threatened injury outweighs the threatened harm to the defendant"; and (4) "granting of the [TRO] will not disserve the public interest."  *Richland Equip. Co. v. Deere & Co.*, No. 5:17-CV-88-KS-MTP, 2017 WL 7037742, at *1 (S.D. Miss. July 18, 2017) (internal quotation marks omitted) (quoting *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)).  A TRO "should not be granted unless the movant clearly carries the burden of persuasion."  *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).  And contrary to Brown's argument, when deciding a TRO motion, district courts may "employ informal procedures and rely on generally inadmissible evidence[.]"  *Sierra Club v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.").

It was Brown's burden to establish each of the four essential elements for a TRO, yet he failed to address any of them. *See Dennis v. Jones*, No. 5:19-CV-72-DCB-MTP, 2020 WL 2747228, at *1 (S.D. Miss. May 27, 2020). As a generally matter, he could not have satisfy those factors anyway—especially irreparable harm—because he does not owe the money he seeks to enjoin Defendant from collecting. *See* Letter [26-1] at 6 ("[N]o recoupment of disability severance pay is required"). Accordingly, his motion for a TRO is denied.

V.     Motion for a Hearing

Brown says he "can show [through] his evidence that the Defendant[] and Defendant['s] Attorneys[] have committed fraud on the Court." Pl.'s Mot. [26] at 1. In his reply, Brown specifies that "[p]erjury . . . was committed during the Board of Veterans Appeal Hearing by the defendant, Veterans Affairs." Pl.'s Reply [31] at 2.

Local Uniform Civil Rule 7(b)(6)(A) states, "The court will decide motions without a hearing or oral argument unless otherwise ordered by the court on its own motion or, in its discretion, upon written request made by counsel in an easily discernible manner on the face of the motion or response." The decision to hold a hearing under this rule is discretionary. *Francois v. Colonial Freight Sys., Inc.*, No. 3:06-CV-434-WHB-LRA, 2007 WL 4564869, at *1 n.1 (S.D. Miss. Dec. 20, 2007).

It is not clear how a hearing regarding any alleged misconduct, even assuming it occurred, relates to or would inform any pending motion. Brown prevailed in part on the motion to dismiss, and Defendant's alleged fraud would not impact the motion to strike its affirmative defenses or Brown's requested TRO. As to the latter, Defendant appears to have remedied Brown's specific grievance and concede that Brown does *not* owe $15,699.60. Letter [26-1]. So

regardless of any alleged malfeasance by Defendant during the agency-appeal process, Brown has not shown a basis for an evidentiary hearing at this time.

VI.     Conclusion

The Court has considered all arguments. Those not addressed would not change the outcome. For the reasons stated, Brown's motion to strike [17], motion for a TRO [19], and motion for a hearing [26] are denied. Defendant's motion to dismiss [32] is granted as to any claims based on the VA's benefits decision but otherwise denied.[5]

**SO ORDERED AND ADJUDGED** this the 14th day of December, 2020.

s/ *Daniel P. Jordan III*<br>CHIEF UNITED STATES DISTRICT JUDGE

---

[5]Lack of subject-matter jurisdiction may be raised at any time before judgment. As may be apparent from the Court's analysis, it has struggled a bit with Brown's pro se pleadings. Pro se plaintiffs are held "to a more lenient standard than lawyers when analyzing complaints," and the Court applied that principle here. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). But if it appears at some point that jurisdiction is lacking, Defendant should re-assert its motion.